UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JOHN COCQUYT, | ) |
| Plaintiff, | ) ) ) |
| v. | ) 3:19-CV-933-PPS ) |
| SPARTANNASH COMPANY, *et al.*, | ) ) |
| Defendants. | ) ) |

## OPINION AND ORDER

John Cocquyt entered into a three year employment agreement with his former employer, Martin's Super Markets, and while the agreement was in effect, Martin's was purchased by SpartanNash Company. SpartanNash sacked Cocquyt within one year of the purchase of Martin's and, as a result, he claims that SpartanNash owes him a severance equal to two years of his salary pursuant to the terms of the agreement. Both Cocquyt and SpartanNash now seek summary judgment. I find the contract to be ambiguous and factual questions remain as to the true intent behind the employment agreement. Because of this, summary judgment is not warranted for either party.

### Factual Background

The following are the undisputed material facts as set forth by the parties. Up until August 2016, Cocquyt was an executive with Coca-Cola, and he held a lucrative and long-term position. [DE 36-1 ¶¶ 2-3.] Robert Bartels, Martin's President and CEO, began recruiting Cocquyt to leave Coca-Cola and join Martin's. [DE 36-2 ¶¶ 2-4.] After

an extended negotiation, Cocquyt ultimately agreed and joined Martin's, and when he came on board Cocquyt entered into a three year employment agreement with Martin's. [DE 36-5.]  The agreement provided for an automatic renewal in one-year increments unless either party gave notice of intent not to renew at least 60-days before the end of the initial term, or any renewal term thereafter.  [DE 36-5 ¶ 10.]

As noted, before Cocquyt signed the employment agreement with Martin's, the parties engaged in lengthy negotiations. [DE 36-3 at 15-16.]  Cocquyt had two principal concerns.  First, he wanted some security in the form of a multi-year contract to protect him if things did not work out at Martin's and they wanted to get rid of him.  After all, he was leaving a good position at Coca-Cola, and he wanted some sense that Martin's was in it for the long haul.  Consequently, Cocquyt negotiated a three year term with a two-year severance package if Cocquyt was terminated prior to that without cause.

But Cocquyt also had a second concern.  What would happen to him if the Bartels family sold the business?  Indeed, Cocquyt had heard rumors that the family might sell Martin's, and he sought protection in the employment agreement if in fact Martin's was sold and the new owner terminated him.  [DE 36-1 ¶ 5.]  To address this concern, Cocquyt and Bartles negotiated a "change of control" clause in his employment agreement that also included a severance package.  [DE 36-5 at 4; DE 36-3 at 29-30; DE 36-1 ¶ 5; DE 36-2 ¶¶ 5-6.]  The employment agreement was amended a couple of months later (but still effective August 25, 2016) and the operative version provides that "if, and only if" Cocquyt was terminated within twelve months of a

2

"change of control," he would receive an amount equal to two times his base salary.

[DE 36-6 ¶5(e).] Here's the language of the provision in its entirety:

> (5)(e) Change of Control. ***If, and only if,*** the Employee is terminated within twelve (12) months after a change in control (i.e., change of control meaning substantially all of the Company's assets become owned by persons and/or entities that are not descendants of nor entities controlled by descendants of Robert E. Bartels Sr.,) ***then and in that event*** Employee shall receive from the Company an amount equal to two (2) times Employee's Base Salary in effect for the calendar year immediately preceding the calendar year in which his termination of employment occurs, and Section 5(d) shall be inapplicable. Such payments are to begin within thirty (30) days of the date of severance and be made over an eighteen (18) month period.

[DE 36-6 (emphasis added), ¶ 5(e).]

The placement of this provision in the contract is central to the dispute in this case. The Change of Control provision falls under Paragraph 5 of the contract. The prefatory sentence of paragraph 5 states: "**Termination; Rights on Termination**. Employee's employment *may* be terminated in one of the following ways, *prior to the expiration of the Full-Time Term:*". [DE 36-5 ¶ 5 (emphasis added).] Under paragraph 5, there are six enumerated ways an employee's employment may be terminated prior to the expiration of the Full-Time Term: (a) by death, (b) disability, (c) termination by the company for cause, (d) termination without cause, (e) change of control, and (f) employee resignation or self-termination. [*Id.*] Importantly, Section (5)(d) establishes that Cocquyt would get two years severance if he was terminated without cause. Here's what it says:

> *Without cause.* At any time after the commencement of

3

> employment, the Company may, without cause, terminate the Term and Employee's employment, effective thirty (30) days after written notice is provided to the Employee. Should Employee be terminated by the Company without cause, subject to Section 5(g) below, Employee shall receive from the Company the base salary at the rate then in effect for twenty-four (24) months from the date of termination. Such payments shall begin within thirty (30) days of Employee's severance and will be made over a twenty-four (24) month period in twenty-four (24) equal monthly payments.

[DE 36-6 ¶ 5(d).]

Cocquyt quit his job at Coca-Cola and started at Martin's in the Summer of 2016. He was hired as Martin's Senior Vice President of Strategy, and his three year contract commenced on August 29, 2016. [DE 36-5 at 1.] Cocquyt's initial annual base salary with Martin's was $245,000 and by 2018, it had increased to $262,000. [DE 36-5 at 1-2, DE 36-8 ¶ 33.] But hopes for a long term relationship were dashed; the rumor that Martin's would one day be sold ended up being true. Roughly 28 months later, on December 31, 2018, Martin's sold to SpartanNash pursuant to a stock sale. For the time being, Cocquyt continued to work for SpartanNash. But on June 14, 2019, SpartanNash gave Cocquyt written notice it was not renewing his employment agreement when it would expire on August 29, 2019, and consequently, he was being terminated. [DE 36-11.]

SpartanNash's position is that Cocquyt was not entitled to the two-year severance payment because Cocquyt's employment was not terminated *before* the expiration of his full-time term. In other words, SpartanNash reads the prefatory language of paragraph 5 — "employee's employment may be terminated in any one of

the following ways, prior to the expiration of the Full-Time Term" — to mean that the Change of Control provision was triggered *only* if Cocquyt's employment was terminated prior to the expiration of the three-year term. [DE 36-5 ¶ 5.] From SpartanNash's viewpoint, it did not owe the Change of Control severance because it waited until Cocquyt's three year term of employment expired, and chose not to renew it. As a result, SpartanNash advised Cocquyt he would not receive the 2-year severance pay, but it would agree to pay Cocquyt a severance equal to 26 weeks of his base salary. [DE 36-11, 36-12.] The letter to Cocquyt also stated that "[i]n order to receive this severance payment, you will need to sign a separation agreement with a release of claims and other terms related to your departure." [DE 36-11.] The proposed separation agreement used the phrase "termination of employment" as opposed to something like "nonrenewal of employment agreement" or words to that effect. [DE 36-12 at 1.]

Cocquyt declined SpartanNash's offer. Cocquyt has a different interpretation of the employment contract. He points to the language in 5(e) that states "*if, and only if,* the employee is terminated within twelve (12) months after a change in control . . . *then and in that event*" he will receive an amount equal to two times his base salary. [DE 36-6 (emphasis added), ¶ 5(e).] Cocquyt believes that since he was fired within one year of the time SpartanNash purchased Martin's, he necessarily should get the severance payment. To Cocquyt, it is irrelevant that his contract term expired during this time frame. From his point of view, he got terminated within a year of the change in control, and he is therefore owed the severance.

5

**Discussion**

Cocquyt filed this lawsuit in state court and the case was removed on the basis of diversity of citizenship. The complaint states two causes of action. The first is for breach of contract for failure to pay Cocquyt the amount he is entitled under the Change of Control provision. The second claim is for a declaratory judgment asking the court to declare that Cocquyt is entitled to receive $524,000. In these cross motions for summary judgment, both Cocquyt and the defendants claim the contract is unambiguous (and should be read in their favor) — with Cocquyt then arguing as a followup that if I find it is ambiguous, the evidence shows the ambiguity should be resolved in his favor.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On cross motions for summary judgment, I need to assess whether each movant has satisfied the requirements of Rule 56. *See Cont'l Cas. Co. v. Nw. Nat'l Ins. Co.*, 427 F.3d 1038, 1041 (7th Cir. 2005); *McKinney v. Cadleway Props., Inc.*, 548 F.3d 496, 504 n. 4 (7th Cir. 2008). "As with any summary judgment motion, [the Court] review[s] cross-motions for summary judgment construing all facts, and drawing all reasonable inferences from those facts, in favor of the non-moving party." *Laskin v. Siegel*, 728 F.3d

731, 734 (7th Cir. 2013) (internal quotation marks omitted).

Let's first set out the law governing this matter. The goal of contract interpretation under Indiana law is to determine the parties' intent. *Tender Loving Care Mgmt., Inc. v. Sherls*, 14 N.E.3d 67, 72 (Ind. Ct. App. 2014). For this reason, an unambiguous contract "should be given its plain and ordinary meaning." *RLI Ins. Co. v. Conseco, Inc.*, 543 F.3d 384, 390 (7th Cir. 2008). Where the terms of a contract are clear and unambiguous, they are conclusive, and the court will not construe the contract or consider extrinsic evidence. *Eckart v. Davis*, 631 N.E.2d 494, 497 (Ind. Ct. App. 1994). A contract is not ambiguous merely because the parties disagree as to its proper construction. *Vincennes Univ. by the Bd. of Trs. of Vincennes v. Sparks*, 988 N.E.2d 1160, 1165 (Ind. Ct. App. 2013). A contract will be found to be ambiguous only if reasonable persons would differ as to the meaning of its terms or find it susceptible to more than one construction. *Id.*

In looking at a contract, I must read it as a whole — the meaning of a contract is ascertained from considering all of its provisions, not from just looking at individual words, phrases, or paragraphs alone. *Evansville-Vanderburgh Sch. Corp. v. Moll*, 344 N.E.2d 831, 837 (Ind. 1976). Similarly, if it is reasonable, I must accept a construction of a contract that harmonizes all of its provisions (rather than a construction that causes the provisions to conflict). *Four Seasons Mfg., Inc. v. 1001 Coliseum, LLC,* 870 N.E.2d 494, 501 (Ind. Ct. App. 2007). I must "make all attempts to construe the language in a contract so as not to render any words, phrases, or terms ineffective or meaningless."

7

*Allen v. Cedar Real Estate Group, LLP*, 236 F.3d 374, 380 (7th Cir. 2001) (quotation omitted).

Applying these principles, my first task is to determine if the contract is ambiguous. I must confess that I have read and re-read the agreement many times, and every time I do, I am left befuddled about the true intent of the parties. I was hoping an oral argument might provide me some clarity. It did not. To their credit, both sides presented cogent and strong arguments. In the end, in reviewing the contract as a whole, as required by the law, I am convinced that reasonable persons could interpret it differently and that it is ambiguous.

On the one hand, Cocquyt's reading makes sense because the Change of Control provision specifically states that "if, and only if" he is terminated within 12 months after a change in control, then he is entitled to the special severance. The "if, and only if" language can be read as creating an exception to the prefatory language of paragraph 5 establishing that these are ways of termination prior to expiration of the employment term. Moreover, attempting to give all the clauses meaning in the contract, as I must, if the Change of Control provision only provides that Cocquyt would get paid the 2 year severance if he was terminated during his 3 year term (as defendants insist), then section 5(d), which specifically deals with termination without cause and grants Cocquyt 24 months salary from the date of termination, would basically be superfluous. In other words, what is the point of the Change of Control language in section 5(e) of the agreement if Cocquyt is already protected by section 5(d)? It could be reasonably

8

read that the Change of Control provision is providing for exactly this situation — if Cocquyt got fired within a year of Martin's being purchased, and the time of termination fell outside of his 3-year term. It's designed as a poison pill for the would be purchaser of the company. But from Cocquyt's point of view, it makes perfect sense that he would want to bargain for a year of employment security after a change in control to give him the opportunity to prove himself to the new company.

On the other hand, SpartanNash's reading is also plausible. For starters, this is a three year contract. Once the contract was not renewed, the agreement is no longer operative, and there is nothing left to enforce. What's more, the introductory sentence in paragraph 5 states the employee may be terminated in one of the following ways, "prior to the expiration of the Full-Time Term." Because the Change of Control provision is a subparagraph under paragraph 5, when read in conjunction with the lead-in, if Cocquyt is terminated within 12 months of a change in control and before the expiration of his full term, he is owed the severance. In other words, it is a sensible reading that the Change of Control provision doesn't kick in *unless* Cocquyt was fired prior to the expiration of his 3-year term. And in this case, it is undisputed that SpartanNash waited 6 months after the purchase to then terminate Cocquyt at the end of his 3-year employment term by not renewing his contract.

Both of these interpretations seem entirely plausible. In the end, "[b]ecause reasonable people could come to different conclusions about the meaning of the clause, the court finds that the clause is ambiguous." *Bradley v. W. & S. Fin. Grp.*, No. 2:05 CV

9

39, 2005 WL 2709282, at *3 (N.D. Ind. Oct. 20, 2005) (denying summary judgment).

Cocquyt argues that even if I conclude the contract is ambiguous, I should find that the evidence shows the ambiguity should be resolved in his favor. He has submitted a number of deposition transcripts and affidavits as extrinsic evidence in support. A latent ambiguity, like the ambiguity in this contract, "arises not upon the face of the instrument by virtue of the words used, but emerges in attempting to apply those words in the manner directed in the instrument. Extrinsic evidence is admissible to explain or clear up a latent ambiguity." *Adams v. Reinaker*, 808 N.E.2d 192, 196 (Ind. Ct. App. 2004) (quotation omitted). Because Defendants argued almost exclusively that the contract was unambiguous, they really did not present any extrinsic evidence.

However, in their response memorandum, Defendants raise an issue that can be considered a disputed issue of material fact regarding the crucial testimony of Robert Bartels. [DE 42 at 4.] Cocquyt submitted Bartels' affidavit along with his motion for summary judgment, in which Bartels stated:

> [M]y intent in including the Change in Control clause was to provide John [Cocquyt] with severance for a 2-year period in the event a new owner ended John's employment within 12 months of acquiring Martin's - be it through any manner whatsoever - including firing John, not renewing his Employment Agreement - by which John would no longer be a Martin's employee within 12 months of the change in control.

[DE 36-2 ¶ 6.] Bartels went on in his affidavit to say that by ending Cocquyt's employment and failing to pay him the severance payment as provided by the Change in Control clause, SpartanNash acted contrary to Martin's intent when it drafted the

10

clause.  [*Id.* ¶ 9.]

However, as Defendants point out, when being questioned about the contract during his deposition taken in July 2020, the attorney asked whether the contract could be terminated in any of the ways listed in paragraph 5 prior to expiration, and Bartels answered "yes." [Bartels Dep., DE 26-2 at 28-29.]  When asked "[s]o it could be terminated in this manner before that three-year term expired?" Bartels answered, "[t]hat's correct." [*Id.* at 29.]  Defendants argue that Bartels' subsequent affidavit is "self-serving" and Cocquyt manufactured an issue of fact by submitting an affidavit that contradicts Bartels' prior deposition testimony. [DE 42 at 4.]

Of course, Cocquyt disputes that the affidavit is self-serving and manufactured, believes it doesn't really contradict Bartels' earlier deposition testimony, and tries to distinguish Defendants' case law in arguing the court can still rely on the affidavit. [DE 44 at 4-5.]  Nevertheless, I think Defendants pointing out the possible contradiction between Bartels' deposition testimony and his affidavit serves to create an issue of material fact rendering summary judgment inappropriate.  As stated by the Indiana Supreme Court:

> [W]hile the contract is ambiguous and uncertain in its terms, we believe that the meaning of the contract may well need to be determined by extrinsic evidence.  As such, its construction is a matter for the factfinder.  Rules of contract construction and extrinsic evidence need to be employed to determine and give effect to the parties' reasonable expectations.  Under such circumstances, resolution of this issue is inappropriate for summary judgment.

*Fresh Cut, Inc. v. Fazli*, 650 N.E.2d 1126, 1133 (Ind. 1995).

11

There is a genuine issue of material fact as to what the parties intended the Change of Control clause to mean as applied to the facts of this case, and this will need to be resolved after the consideration of all the extrinsic evidence, not on these motions for summary judgment as a matter of law.

## Conclusion

For the reasons set forth above, Defendants Martin's Super Markets and SpartanNash Company's Motion for Summary Judgment [DE 31] and Plaintiff John Cocquyt's Motion for Summary Judgment [DE 33] are BOTH DENIED. An Order for Pretrial Conference, Notice of Trial Setting and Order Controlling the case was already entered in this case. [DE 30.] The Court will set a telephonic scheduling conference, for the purpose of scheduling a Settlement Conference before a Magistrate Judge, the Trial Management Conference, and a bench trial date, and to discuss any other issues pending at that time.

ENTERED: January 26, 2021.

/s/ Philip P. Simon
**PHILIP P. SIMON, JUDGE**
**UNITED STATES DISTRICT COURT**